UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

TOWER PROPERTIES LLC , d/b/a NICOLES
a/k/a NICOLES CATERING HALL

        Plaintiff,
   -against-                      AMENDED COMPLAINT

VILLAGE OF HIGHLAND FALLS        Index No.: 14-CV-04502
and PATRICK FLYNN, individually
and as Mayor of the Village of
Highland Falls

        Defendants

_____X

      Plaintiff, by its attorney, Jeff Feigelson, Esq., as and for its Complaint alleges upon information and belief as follows:

**Preliminary Statement**

1. This is a civil action seeking damages against the Defendants.  The plaintiff, Tower Properties LLC d/b/a Nicoles a/k/a Nicoles Catering Hall ("Nicoles"), is a catering hall located in Highland Falls, New York.  The clientele of Nicoles is predominantly African-Americans of all ages and the employees of Nicoles are primarily African-Americans and other minorities. Defendant Patrick Flynn is the Mayor of Highland Falls.  Defendant Mayor Flynn has publicly expressed his concern that Nicoles is attracting the "wrong crowd" and Defendants Mayor Flynn and the Village of Highland Falls have intentionally embarked on a continuous policy and practice, as set forth herein, to harass and shut down Nicoles because of the race of those who come to Nicoles.

1

**Parties**

2.  The Plaintiff is a limited liability company organized in the State of New York.

3.  The Defendant, Village of Highland Falls, is a duly incorporated municipal corporation.

4.  The Defendant, Patrick Flynn, is an individual residing in the Village of Highland Falls and is the mayor of Highland Falls.

**Facts**

5.  The Plaintiff owns a catering hall business located at 11 Main Street in the Village of Highland Falls (the "Building") and has been operating for approximately 16 months.

6.  Prior to the Plaintiff operating Nicoles, the Building was operated as a catering hall by another entity (the "Prior Owner") for over ten years.

7.  Most of the employees of the Plaintiff are minorities, primarily African-Americans.

8.  The head of Promotions at Nicoles, Woodley Charles, is an African-American of Haitian decent.

9.  At the current time, most of the weddings, sweet-sixteens, birthdays and other private parties held at Nicoles cater primarily to African-Americans.

10. Defendants Flynn and the Village of Highland Falls have maintained and enforced a policy and practice of discrimination against African-Americans.  In furtherance of such policy and practice, Defendants Flynn and the Village of Highland Falls have taken any and all actions to harass and attempt to shut down Nicoles simply because

the Defendants do not want a large amount of African-Americans at Nicoles and in the Highland Falls area.

<u>Statement of Defendant Mayor Flynn and his Staff</u>

11. Defendant Mayor Flynn has made it clear to Nicoles that he does not want a significant amount of African-Americans coming to Nicoles.  For example, during a Village Board meeting on March 17, 2014, the Defendant Patrick Flynn stated that **"I'm concerned about the functions that are happening at Nicoles … they're attracting a large group from Spring Valley and Newburgh"**.  This quote can be found at the following website address:

http://www.youtube.com/watch?v=sZK3EVyznBI (at 54:30 minutes to 55:10 minutes).

12. Newburgh and Spring Valley are commonly known to have a large percentage of African-Americans living in their communities.  Defendant Mayor Flynn's statements are code words for "African-Americans", and Defendant Mayor Flynn's comments reflect his bias against a segment of our society.

13. Defendant Mayor Flynn has met with the head of Promotions at Nicoles and told him that Nicoles is getting the **"wrong crowd"** and that he does not want **"these types of people infecting Highland Falls"**.  Defendant Mayor Flynn further explained that he thought these type of people were troublemakers and that he did not want them in Highland Falls.

14. Defendant Mayor Flynn's term of "wrong crowd" is code word for "African-Americans", and Defendant Mayor Flynn's comments reflect his bias towards a segment of our society.

15. Konstantinos Fatsis is the prosecutor for the Village of Highland Falls and was recently appointed to such position by Defendant Mayor Flynn.  On Facebook, Mr. Fatsis referred to the African-American customers of Nicoles as **"hood rats"**.  Specifically, Mr. Fatsis recently wrote the following on Facebook:  **"Did anyone see the hood rats there on New Years Eve? … There were tons of hood rats there…How about just the hood rat element not being wholesale invited in [to Highland Falls] because they have a venue [Nicoles] in someone else's town [Highland Falls]"**.  The vast majority of Nicole's clientele on New Year's Eve were African-American.  A copy of these statements by Mr. Fatsis is attached to this Complaint as **Exhibit A.**  These racist remarks reflect the bias of some of the leaders of Defendant Village of Highland Falls towards African-Americans.

<u>Selective enforcement of Live Entertainment Statute</u>

16. Chapter 126 of the Village Code of Highland Falls (the "Live Entertainment Statute") states that any person providing live entertainment, for the purpose of entertaining an audience, shall be required to obtain a permit (the "Live Entertainment Permit") from the Village of Highland Falls.  Live entertainment is generally defined as a live band or a dee-jay.  A copy of the Live Entertainment Statute is attached to this Complaint as **EXHIBIT B**.

17. In the history of the Village of Highland Falls, no violation notice was ever issued under the Live Entertainment Statute even though most of the bars/restaurants/catering halls in the Village of Highland Falls have failed to comply with such statute.  For example, the Prior Owner of Nicoles, who operated a catering hall for over ten years and did not primarily cater to African-Americans, never had a Live Entertainment Permit and was never issued a violation of the Live Entertainment Statute.  Attached to this Complaint as **EXHIBIT C** is an email from the Defendant Village of Highland Falls stating that the Prior Owner of Nicoles did not have a Live Entertainment Permit over the previous ten year period.  Attached to this Complaint as **EXHIBIT D** is a letter from the previous Mayor of Highland Falls stating that during his twenty years in office, no violation notice was ever issued under the Live Entertainment Statute.

18. In early January 2014, instead of simply notifying Nicoles that they needed a Live Entertainment Permit, the Mayor ordered the police to issue a violation notice to Nicoles.  A copy of the memorandum sent by the chief of police, on the orders of Defendant Mayor Flynn, to his officers is attached to this Complaint as **EXHIBIT E**.

19. On or about 11:50 p.m. on Saturday, January 11, 2014, without any advance notice, and upon the order of Defendant Mayor Flynn, the Village of Highland police came to Nicoles and (1) delivered a violation notice (the "Violation") to Nicoles for failing to have a Live Entertainment Permit and (2) ordered Nicoles to shut down for the night.

20. At the time of the Violation, the penalty for a violation of the Live Entertainment Statute was a monetary fine of up to $250 and/or 15 days in jail.

21. At the time of the Violation, there was no history of any altercations at Nicoles nor any police complaints or incidents regarding Nicoles.

22. The following bars in the Village of Highland Falls (collectively, the "White Establishments") have live entertainment at their facilities from time to time and are required to have a Live Entertainment Permit:  Park Restaurant, Fireside Hotel & Restaurant, Benny Havens Sports Café, Loma's Side Street Saloon and South Gate Tavern.

23. Unlike Nicoles, the customers of the White Establishments are predominantly white.

24. At the time Nicoles received the Violation, none of the White Establishments had a Live Entertainment Permit and none of the White Establishments received a violation notice.   Attached to this Complaint as **EXHIBIT C** is an email from the Defendant Village of Highland Falls stating that, as of February 10, 2014, no one in the Village of Highland Falls had a Live Entertainment Permit except Nicoles.

25. In his private life, Defendant Mayor Flynn owns a company called Party Time Productions.

26. Party Time Production provides dee-jays for weddings, bar mitzvahs and other events and is required to obtain a Live Entertainment Permit when it performs any services in the Village of Highland Falls.

27.  Party Time Production has provided deejay services in the Village of Highland Falls on many occasions, including without limitation, on December 16, 2011, April 28, 2013, June 28 2013 and May 10, 2014.

28.  Party Time Productions has never obtained a Live Entertainment Permit for these or other events it has held in Highland Falls and the Defendant Village of Highland Falls has never given a violation notice to Party Time Productions or Defendant Flynn for its failure to comply with the Live Entertainment Statute.

29.  Historically, the selective enforcement of the laws is a classic symptom of racial discrimination.  Here, during the past 40 years, the only person/entity who has ever had the Live Entertainment Statute enforced against it was Nicoles, despite the fact that the White Establishments were also having live entertainment without a Live Entertainment Permit.

30.  And, most troubling, the Defendant Mayor Flynn's own private company, Party Time Productions, has never been given a violation notice even though it has been in flagrant violation of the Live Entertainment Statute for years.

31.  Nicoles was singled out for the Violation because the Defendants do not want a large amount of African-Americans at Nicoles and in the Highland Falls area and the Defendants are attempting to shut down Nicoles.

32. In the more than forty years that the Live Entertainment Statute has been in existence, the Village of Highland Falls has never issued a violation of the Live Entertainment Statute against any entity (other than Nicoles) even though many of the White Establishments provide live entertainment.  Further, the Village of

Highland Falls has decided not to enforce the Live Entertainment Statute against its own mayor even though he has been in flagrant violation of the Live Entertainment Statute for years.

33.  In sum, the Defendants carried out their policy and practice of discriminating against African-Americans by selectively enforcing the Live Entertainment Statute only against Nicoles; while intentionally electing not to enforce the Live Entertainment Statute against the White Establishments and intentionally electing not to enforce the Live Entertainment Statute against Defendant Flynn.

## Delay in Getting Live Entertainment Permit

34.  In order to obtain a Live Entertainment Permit, an applicant must fill out an application and deliver a nominal permit fee to the Village of Highland Falls.

35.  The Live Entertainment Statute states that upon the Village's receipt of such application and permit fee, the Chief of Police shall cause an investigation to be made to see if "the applicant is a person of good moral character" and if so, the police chief shall approve the application.

36.  The Live Entertainment Statute requires that the Live Entertainment Permit must be granted if the police chief determines that "the applicant is a person of good moral character".

37.  Neither the Village Board nor the Defendant Mayor Flynn have the power to refuse to issue the Live Entertainment Permit if the police chief determines that "the applicant is a person of good moral character".

38. On or about January 13, 2014, Nicoles filed an application for a Live Entertainment Permit and delivered the permit fee to the Defendant Village of Highland Falls.

39. Upon receipt of the application of Nicoles, the police chief conducted his customary investigation and the police chief concluded, on or about January 15th, 2014, that the applicant is a person of good moral character, and thus was entitled to receive the Live Entertainment Permit.

40. At the time Nicoles applied for the Live Entertainment Permit, there were never any altercations at Nicoles nor any police complaints or incidents regarding Nicoles.

41. Despite the fact that the police chief had no problem signing off on the Live Entertainment Permit, and according to the police chief, the Defendant Mayor Flynn requested that the police chief not approve the Live Entertainment Permit **"until I tell you to"**.

42. Despite the fact that the police chief was willing to approve the application for Nicoles on or before January 15, 2014, the Defendants still refused to issue Nicoles a Live Entertainment Permit and stated that the issue would delayed until the Village Board voted on the issue at its next meeting on January 22, 2014.

43. The Village Board eventually voted to grant Nicoles a Live Entertainment Permit and Nicoles received the Live Entertainment Permit on or about January 24th, 2014.

44. In the history of Highland Falls, except for Nicoles, no applicant for a Live Entertainment Permit has ever had to have the Village Board vote on its application. Attached to this Complaint as **EXHIBIT D** is a letter from the previous Mayor of

Highland Falls stating that, during his twenty years in office, the police chief (and not

the Village Board) is the person who typically approved Live Entertainment Permits.

45. In the history of Highland Falls, no person/entity has waited more than three days

for the approval of a Live Entertainment Permit.

46. In the history of Highland Falls, other than with Nicoles, no mayor has instructed his

police chief to hold off on approving a live entertainment application.

47. As a result of the decision of Defendant Mayor Flynn to delay the granting of the

Live Entertainment Permit, Nicoles was forced to cancel two events it had planned

for the weekend of January 17-18, 2014.

48. As a result of such cancellation, Nicoles incurred damages in the form of lost profits

and incurred ill will with its customers.

49. The purpose of the delay in granting Nicoles the Live Entertainment Permit was to

target Nicoles simply because Defendant Mayor Flynn does not want African-

Americans coming to Nicoles, and being in the Highland Falls area.

50. The Defendants carried out their policy and practice of intentionally discriminating

against African-Americans by making it more difficult for Nicoles to obtain the Live

Entertainment Permit, including changing the procedure for Nicoles to obtain such

Live Entertainment Permit.

51. Section 126-5 B of the Live Entertainment Statute states that "Each permit shall

expire **one year** from the date of issuance " [emphasis added].  This one year period

is reflected in one or more Live Entertainment Permits which were issued to the

White Establishments.  For example, the term of the live entertainment permit (a

copy of which is attached to this Complaint as **EXHIBIT F**) issued to one of the White Establishments a few years ago is for one year.

52.  However, the one year term set forth in Section 126-5 B of the Live Entertainment Statute does not apply to Nicoles.  The Live Entertainment Permit obtained by Nicoles, a copy of which is attached to this Complaint as **EXHIBIT G**, is only valid for six months.

53. The Defendants carried out their policy and practice of intentionally discriminating against African-Americans by only allowing the Live Entertainment Permit for Nicoles to have a term of six months, which six month term is in direct conflict with the Live Entertainment Statute and is contrary to other Live Entertainment Permit(s) obtained by the White Establishments.

<u>Amendment of Live Entertainment Statute</u>

54.  On or about March 17, 2014, the Live Entertainment Statute was amended (the "Amendment") to increase the monetary penalty for a violation from $250 to $1,000.

55.  At a Village Board meeting on March 17th, 2014, after repeated questioning, Defendant Mayor Flynn finally admitted that the Amendment was proposed solely because of the existence of Nicoles – he wanted to have a higher fine for Nicoles in the future.

56.  At such Village Board meeting, Defendant Mayor Flynn stated as follows:  "I'm concerned about the functions that are happening at Nicoles … they're attracting a

large group from Spring Valley and Newburgh... **this is why this [amendment of the Live Entertainment Statute] has happened"**.

57.  At such Town Board meeting, Defendant Mayor Flynn stated he hoped that he can take away the Live Entertainment Permit from Nicoles, and then **"fine them or put them in jail"** if they have events.

58.  The sole purpose of the Amendment was to target Nicoles simply because the Defendants do not want a large group of African-Americans coming to Nicoles, and being in the Highland Falls area.

59.  The Defendants carried out their policy and practice of intentionally discriminating against African-Americans by amending the Live Entertainment Statute for the sole purpose of targeting Nicoles for closure and putting the principals of Nicoles in jail.


<u>Selective enforcement of the 2 a.m. curfew</u>

60. Nicoles has been notified orally and in writing by the Defendants that Nicoles may not play music after 2 a.m. and that if music is played after 2 a.m., the Live Entertainment Permit of Nicoles will be revoked.  Thus, this 2 a.m. curfew is currently being enforced against Nicoles.

61.  As a result of such notification, Nicoles is forced to shut down its events on or before 2 a.m.

62.  This 2 a.m. curfew is only enforced against Nicoles.  This 2 a.m. curfew is not enforced against the White Establishments, who often play music and operate well after 2 a.m. with complete impunity.

63. Nicoles has been forced to hire a private investigator to document the time of operations of the White Establishments.

64. The private investigator hired by Nicoles has documented what Nicoles has always known – that the 2 a.m. curfew is not enforced against the White Establishments.

65. For example, during the first two weeks in May 2014, the following bars were playing loud music at the following hours: Fireside Hotel & Restaurant – Saturday night/Sunday morning May 3, 2014: 3:20 a.m.; Loma's Side Street Saloon – Saturday night/Sunday morning May 10, 2014: 3:08 a.m.; Fireside Hotel & Restaurant - Saturday night/Sunday morning May 10, 2014: 2:58 a.m.

66. As set forth above, the selective enforcement of the laws is a classic symptom of racial discrimination.  Here, the 2 a.m. curfew only applies to Nicoles; and the White Establishments operate at all hours with complete impunity.

67. The Defendants carried out their policy and practice of intentionally discriminating against African-Americans by selectively enforcing the 2 a.m. curfew only against Nicoles simply because the Defendants do not want a large amount of African-Americans at Nicoles and in the Highland Falls area.

<u>Police Reports and Police Investigations</u>

68. Defendant Mayor Flynn has filed one or more police reports with respect to Nicoles for "suspicious activity".

69. When the police investigated this "suspicious activity", the police merely found one or more African-American employees coming in and out of the Building.

70. When Nicoles initially inquired with Defendant Mayor Flynn as to whether he ever filed a police report against Nicoles , he said "I can't remember".

71. At a later Village Board meeting on January 22, 2014, Defendant Mayor Flynn admitted that he filed one police report against Nicoles.

72. There was no basis for Defendant Mayor Flynn to file a police report against Nicoles.

73. While he has been mayor, Defendant Mayor Flynn has never filed any other police reports against any of the White Establishments or any of the other businesses in the Village of Highland Falls.

74. The sole reason Mayor Flynn filed one of more police reports was because he is treating Nicoles differently because of the large amount of African-Americans who frequent Nicoles.

75. The Mayor has also instructed his police department to conduct a detailed investigation (the "Police Investigation") of the principals of Nicoles and to determine whether any illegal activity was occurring at Nicoles.

76. As set forth in an email dated November 20, 2013 from one of Defendant Mayor Flynn's assistants: **"Also regarding the Nicole's business – if illegal activity is suspected, the first ones to investigate would be your local police who would call in the Attorney General's Office if they feel it necessary."** A copy of this email is attached to this Complaint as **EXHIBIT H**.

77. The basis of the Police Investigation was that Defendant Mayor Flynn suspected that the principals of Nicoles were involved in illegal activity and were working with organized gangs from the surrounding areas.

78. The illegal activity and gang allegations are baseless and the police investigation found no evidence of illegal activity or gang activity.

79. The only reason Defendant Mayor Flynn suspected that there might be illegal activity and gang affiliations was  because (1) a large group of African-Americans were attending the majority of events at Nicoles and (2) African-Americans and other minorities constituted the majority of employees at Nicoles.

80. During his term as Mayor, Defendant Mayor Flynn has never requested the police to conduct a Police Investigation on the White Establishments or any other business in the Village of Highland Falls.

81. Defendant Mayor Flynn has conducted his own personal investigation (the "Personal Investigation") of Nicoles.  In particular, Defendant Mayor Flynn has (i) been seen peering into the Building's windows during off hours, (ii) reviewed the website and Facebook page of Nicoles to find anything objectionable and (iii) kept a close tab on the events held at Nicoles.

82. Defendant Mayor Flynn has notified Nicoles that he objected to certain pictures that were on the Facebook page of Nicoles, primarily pictures of young African American men smiling while holding up a champagne bottle or other bottle of liquor they received in the bottle service offered by Nicoles.

83. While he has been mayor, Defendant Mayor Flynn has never conducted a personal investigation of a White Establishment or any other business in Highland Falls.

84. The sole reason Defendant Mayor Flynn has conducted such private investigation is so that he can try to come up with something to shut down Nicoles because

Defendant Mayor Flynn does not want African-Americans coming to Nicoles, and being in the Highland Falls area.

85. At the time Defendant Mayor Flynn filed his police reports and at the time Defendant Mayor Flynn ordered the Police Investigation and at the time Defendant Mayor Flynn conducted his own personal investigation, there were never any altercations at Nicoles nor were there any police complaints or incidents regarding Nicoles.

86. At a Village of Highland Falls board meeting on January 22, 2014, Defendant Mayor Flynn failed to tell the truth when he stated that he never ordered a Police Investigation regarding Nicoles.

87. The Defendants carried out their policy and practice of intentionally discriminating against African-Americans by (i) causing one or more police reports against Nicoles, (ii) initiating an official police investigating of the principals of Nicoles and (iii) having Defendant Flynn conduct his own personal investigation regarding Nicoles.

<u>Unreasonable Amount of Police Scrutiny</u>

88. During many of the events at Nicoles, the Village of Highland Falls police often have a large presence in and around Nicoles.

89. During many of the events at Nicoles, police cars have been parked in the parking lot of Nicoles with the lights on, and such police cars will stay there for up to an hour.

90. During many of the events at Nicoles, police cars have often been parked just outside Nicoles so that the police can monitor who goes in and out of the parking lot.

91. During the past New Year's Eve, Defendant Mayor Flynn ordered that one-half of the police cars in the police force to be parked right outside Nicoles for the entire evening.

92. The police presence at Nicoles is significantly greater than the police presence at the White Establishments.

93. Defendant Mayor Flynn has ordered this police presence at Nicoles because the customers who attend events at Nicoles are predominantly African-Americans.

94. This heavy police presence, especially the police who park in the parking lot with their lights on, has the effect of deterring customers from coming to Nicoles and caused Nicoles to suffer financial damages.

95. The heavy police presence outside Nicoles constitutes an attempt by the Defendants to intimidate patrons of Nicoles and is consistent with the pattern of discriminatory behavior discussed herein.

96. Defendant Mayor Flynn has ordered the police department to tow any car that is parked right outside Nicoles on Main Street.  The Prior Owner of Nicoles regularly parked in these parking spots for over a decade without the threat of being towed.

97. Defendant Mayor Flynn wants to tow cars that are parked outside of Nicoles because the customers who attend events at Nicoles are predominantly African-

Americans and he does not want a large amount of African-Americans at Nicoles and in the Highland Falls area.

98. The Defendants carried out their policy and practice of intentionally discriminating against African-Americans by (i) seeking to intimidate the clientele of Nicoles with an unreasonable amount of police presence and (ii) harassing the clientele of Nicoles with the threat of towing their cars.

<u>The Defendants Reaction to Altercation outside of Nicoles</u>

99. Thousands of customers have come to events at Nicoles since it opened approximately 16 months ago.

100. During this 16 month period, there has only been one police incident involving Nicoles – on or about January 25, 2014, there was allegedly an altercation outside Nicoles on or around Main Street.

101. No arrests were made during this alteration and no weapons were involved.

102. As a result of such altercation, the Defendants sent a letter to Nicoles (the "Warning Letter") expressing his concern about the altercation and warning Nicoles that their Live Entertainment Permit could be in jeopardy if there are future incidents.

103. Without the Live Entertainment Permit, Nicoles will not be able to operate as a catering hall and would have to shut down.

104. Defendant Mayor Flynn made sure the New York State Liquor Authority was notified about the altercation outside Nicoles.

105. Over the past two years, there have been a significant number of altercations at the White Establishments.

106. The number of altercations at the White Establishments far exceed the one altercation that allegedly occurred outside of Nicoles.

107. The severity of the altercations at the White Establishments far exceed the severity of the one altercation that allegedly occurred at Nicoles.  For example, there was a large brawl outside Benny's Haven Sports Bar on New Year's Eve on December 31, 2013 where there were at least two arrests.

108.  Although the Defendants sent a Warning Letter to Nicoles with respect to the one altercation that allegedly took place there, the Defendants never sent a Warning Letter to the owner of any White Establishment when there were altercations there.

109.  Although the Defendants made sure that the New York State Liquor Authority was notified about the one altercation that allegedly took place at Nicoles, the Defendants never pursued any notification to the New York State Liquor Authority about the altercations that have occurred at the White Establishments.

110.  As set forth above, the selective enforcement of the laws is a classic symptom of racial discrimination.  Here the Defendants used all their power to attempt to shut down Nicoles and get Nicoles in trouble with the New York State Liquor Authority simply because the Defendants do not like a large amount of African-Americans coming to Nicoles and the Highland Falls area; while no similar effort was made by the Defendants to shut down any of the White Establishments (and get them in trouble

with the New York State Liquor Authority) even though there is a far greater incidence, and severity, of altercations at the White Establishments.

111. The Defendants took this action against Nicoles, and not the White Establishments, because the Defendants want to shut down Nicoles because the customers who attend events at Nicoles are predominantly African-Americans.

112. The Defendants carried out their policy and practice of intentionally discriminating against African-Americans by treating Nicoles differently than the White Establishments in regards to the Defendants' reaction to the altercation that occurred at Nicoles.

113. Prior to the altercation at Nicoles, at the urging of Defendant Mayor Flynn, a campaign contributor of Defendant Mayor Flynn filed an anonymous bogus complaint with the New York State Liquor Authority claiming Nicoles was serving "old" alcohol that was taken from the Prior Owner.  This complaint was dismissed by the New York State Liquor Authority.

<u>Defendant Mayor Flynn's Indifference to Racial Events</u>

114. On or about April 2013, a Village of Highland Falls employee (the "Village Employee") made certain threats and racial remarks while he was speaking on the telephone with an employee at a local middle school.

115. Some of the statements made by the Village Employee included the following:

**"If any of those niggers or spics put their hands on my kid again, I'll come down there [to the middle school] and its going to be worse than Sandy Hook.  There is going to be blood."**

116. The Village Employee was arrested and eventually pled guilty to a crime.

117. Upon the arrest of the Village Employee, Defendant Mayor Flynn told the police chief that the police chief overreacted in arresting the Village Employee, and suggested that the arrest should be rescinded.

118. As the mayor of Highland Falls, Defendant Mayor Flynn has the power to discipline the Village Employee.

119. Defendant Mayor Flynn elected not to discipline the Village Employee in any way – the Village Employee was not fired and was not even suspended for one day, and the Village Employee remains on the Village of Highland Falls payroll today.

120. Defendant Mayor Flynn's non-reaction to the Village Employee's racist comments reflects Defendant Mayor Flynn's mindset regarding racial minorities.

### Miscellaneous

121. The Defendants acted under the color of state law and willfully established a policy and practice to discriminate against African-Americans by attempting to shut down Nicoles and otherwise damage Nicoles in derogation of its constitutional rights.

122. The Defendants carried out a policy and practice of intentionally discriminating against African-Americans.  In furtherance of such policy and practice, Defendants Flynn and the Village of Highland Falls have taken the actions set forth in this Complaint in order to harass and attempt to shut down Nicoles simply because the Defendants do not want a large amount of African-Americans at Nicoles and in the Highland Falls area.

123. The actions taken by the Defendants and the decisions made by the Defendants were made by government officials responsible for establishing municipal policies and

such municipal policies directly resulted in the constitutional violations referred to in this Complaint.

124.  As a result of the policy and practice of the Defendants intentionally discriminating against African-Americans, the income and income prospects of Nicoles have been, continue, and will continue to be severely damaged in an amount to be determined at trial.

125.  In addition there has been damage in amounts to be determined at trial to the reputation of Nicoles and its principals.

126.  The Defendants knew, or should have known, that their actions would and did cause damage to Plaintiff Nicoles.

### COUNT ONE
(42 U.S.C. § 1983)

127.  Plaintiff Nicoles repeats and re-alleges the allegations in paragraphs 1 through 126 as if fully set forth herein.

128.  The Defendants, acting under color of law, have violated 42 U.S.C. § 1983 by depriving Plaintiff Nicoles of rights, privileges and immunities secured by the freedom of association clause of the First and Fourteenth amendments of the United States Constitution.

129.  The Defendants, acting under color of law, have violated 42 U.S.C. § 1983 by depriving Plaintiff Nicoles of rights privileges and immunities secured by the equal protection clause of the Fourteenth Amendment of the United States Constitution.

130. The Defendants, acting under color of law, have violated 42 U.S.C. § 1983 by depriving Nicoles of the "life, liberty or property" section of the Fourteenth Amendment of the United States Constitution.

## COUNT TWO
### (42 U.S.C. § 1981)

131. Plaintiff Nicoles repeats and re-alleges the allegations in paragraphs 1 through 126 as if fully set forth herein.

132. The Defendants have violated 42 U.S.C. § 1981 by depriving Plaintiff Nicoles of equal protection under the laws.

## COUNT THREE
### (42 U.S.C. § 1982)

133. Plaintiff Nicoles repeats and re-alleges the allegations in paragraphs 1 through 126 as if fully set forth herein.

134. The members of the Plaintiff are citizens of the United States.

135. The Defendants have violated 42 U.S.C. § 1982 by depriving Plaintiff Nicoles of its right to hold and operate real and personal property.

WHEREFORE, Plaintiff Nicoles requests a judgment:

A. Awarding Plaintiff Nicoles compensatory damages including prospective loss of earnings in an amount to be determined at trial on each cause of action against the Defendants.

B. Awarding Plaintiff reasonable attorney's fees under 42 U.S.C. § 1988(b).

C. Awarding punitive damages in an amount determined at trial.

D.   Awarding Plaintiff Nicoles' costs, disbursements and reasonable attorney's fee

together with such other and further relief as this Court deems just and proper.

Dated: Lagrangeville, NY
      July 18, 2014

JEFF FEIGELSON (JF 7264)
LAW OFFICES OF JEFF FEIGELSON
*Attorney for the Plaintiff*
658 Waterbury Hill Road
Lagrangeville, NY 12540
Telephone:  917-270-5774
Email: jfeigelson@optonline.net

EXHIBIT A



June 4 at 7:17am · Like · 🖒2

**Konstantinos Fatsis** Did anyone see the hood rats there on New Years Eve? No basis for the complaint yes there will be a dime a dozen chiming in. ... I guess people don't want a Mayor who actually cares about the community. They want a Mayor who just wants votes.
June 4 at 7:30am · Like

**DjPlatano Aplus** HOOD RATS? I HAD ALOT OF FAMILY THERE AND THE DOMINICAN AND PUERTO RICAN AND PERUAN N MEXICAN PEOPLE AT THAT NEW YEARS EVE BASH N NO PROBLEMS THAT NIGHT FOR HAVING THOUSAND PEOPLE THERE!!! IN ALL FAIRNESS THE LAW SHOULD ABIDE TO ALL NIGHTS SPOTS NOT JUST ONE!!! IM VERY SURPRISE YOU WOOD SAY HOOD RATS WHEN YOU WASNT AT THE NEW YEARS EVE PARTY Konstantinos Fatsis!! IVE BEEN DJING IN NICOLES THROWING LATIN PARTIES WITH ALL RACES COMING THROUGH N WHEN MATT OWNED IT NEVER HAD A PROBLEM N NEVER HAD ANY VIOLANCE
June 4 at 8:26am · Like · 🖒2

**Konstantinos Fatsis** With all due respect, if you and you're family are not hood rats, then that comment is not directed towards you. That's pretty simple. There were tons of hood rats there. The open liquor bottles in there in violation of the SLA, etc? There is a lot of this that is not being reported by the owners who think they are going to go somewhere with this being they know how to file a lawsuit. This is non-sense. Every establishment has the permits for live entertainment. I mean, really, read the "press release." How racist is the author? Because Newburgh or other places have high percentages of African Americans or Hispanics that automatically implies that the Mayor is racist? How about just the hood rat element not being wholesale invited in because they have a venue in someone else's town. Big difference. I bet you where they live that wouldn't be so welcomed, would it?
June 4 at 8:30am · Like

**DjPlatano Aplus** AND CONTINUED THROWING PARTIES WHILE THE NEW OWNERS CAME AND NO PROBLEMS EITHER OF COURSE A FEW MINOR BUT YOU HAVE

# EXHIBIT B

# Chapter 126. JUKEBOXES AND LIVE ENTERTAINMENT

**[HISTORY: Adopted by the Board of Trustees of the Village of Highland Falls 8-10-1971 by L.L. No. 5-1971 as Ch. 68 of the 1971 Code. Amendments noted where applicable.]**

**GENERAL REFERENCES**
Noise — See Ch. **143**.
Peace and good order — See Ch. **152**.

## § 126-1. Definitions.

As used in this chapter, unless the context otherwise indicates, the following terms shall have the meanings respectively ascribed to them:

**JUKEBOX**
  Any music vending machine, contrivance or device which, upon the insertion of a coin, slug, token, plate, disc or key into any slot, crevice or other opening, or by the payment of any price, operates or may be operated for the emission of songs, music or similar amusement.

**LIVE ENTERTAINMENT**
  The act of entertaining a public or private audience directly at the time of production.

**PERMIT**
  Includes the word "license."

**PERSON, FIRM, CORPORATION or ASSOCIATION**
  Includes any person, firm, corporation or association which owns such machine, the person, firm, corporation or association in whose place of business any such machine is placed for use by the public and the person, firm, corporation or association having control over such machine.

## § 126-2. Permit required.

A. Any person displaying for public patronage or keeping for operation any jukebox, as herein defined by § **126-1**, shall be required to obtain a permit from the Village upon payment of a fee.

B. Any person providing live entertainment, for the purpose of entertaining an audience, shall be required to obtain a permit from the Village upon payment of a fee.

C. Application for such permit shall be made to the Village Clerk.

## § 126-3. Application for permit.

A. Contents. The application for a permit provided for in § **126-2** shall contain the following information:

(1) Name and address of the applicant and the applicant's age, date and place of birth.

(2) Prior conviction of the applicant, if any.

(3) The place where the machine or device is to be displayed or operated and the business conducted at that place.

(4) Description of the machine to be covered by the permit.

B. Age of applicant. No permit shall be issued to any applicant unless he shall be over 21 years of age and a citizen of the United States.

## § 126-4. Action upon application for permit.

A. Investigation. Application for a permit hereunder shall be made out in duplicate with one copy being referred to the Chief of Police, who shall cause an investigation to be made of the location wherein it is proposed to operate such machine, or to allow entertainment, to ascertain if the applicant is a person of good moral character and who shall either approve or disapprove the application.

B. Approval required. No permit shall be issued to any applicant unless the application is approved by the Chief of Police.

## § 126-5. Fees; duration of permit.

A. Every applicant, before being granted a permit hereunder, shall pay for the privilege of operating or maintaining for operation each jukebox, as defined in § 126-1 herein, an annual fee established by resolution of the Board of Trustees.
**[Amended 6-16-1987 by L.L. No. 6-1987]**

B. Each permit shall expire one year from the date of issuance.

C. Every applicant, before being granted a permit hereunder, shall pay for the privilege of providing live entertainment at a rate established by resolution of the Board of Trustees, payable on the first of January and the first of June of each year.
**[Amended 6-16-1987 by L.L. No. 6-1987]**

## § 126-6. Permit restrictions.

A. Display required. The permit or permits herein provided for shall be posted permanently and conspicuously at the location of the machine or live entertainment in the premises covered by such permit.

B. Transfer to another machine. Such permit may be transferred from one machine to another similar machine, provided that the Village Clerk is furnished a description of the new machine within 10 days of the transfer. Not more than one machine shall be operated under one permit, and the applicant shall be required to secure a permit for each and every machine displayed or operated by him.

C. Transfer to new location. If the holder of the permit shall move his place of business to another location within the City, the permit may be transferred to such new location upon application to the Village Clerk, giving the street and number of the new location. The new location shall be approved by the Chief of Police in the same manner as provided for in § 126-4.

D. Transfer to new owner. A permit shall not be transferable from one person to another.

## § 126-7. Revocation of permit; hours of operation.

A. Every permit issued under this chapter is subject to the right, which is hereby expressly reserved, to revoke the same should the holder, directly or indirectly, permit the premises, any jukebox or any person or persons composing live entertainment to operate or be operated contrary to the provisions of this chapter, the ordinances of the Village or the laws of the State of New York.

B. Between the hours of 2:00 a.m. and 8:00 a.m. Monday through Saturday and between 2:00 a.m. and 12:00 noon on Sunday, the holder of a permit shall not allow a jukebox to play or live entertainment to perform and shall not allow at any time the emission of songs, music or similar amusement, whether from a jukebox or live entertainment, to extend beyond the premises controlled by the permit to the point of annoyance or disturbance of any person or persons. Said permit may be revoked by the Village Board after written notice to the holder, which notice shall specify the ordinance or law violations with which the holder is charged, if, after a hearing, the holder is found guilty of such violation. Ten days' notice of the hearing shall be given the holder of the permit. At such hearing, the holder and his attorney may present and submit evidence and witnesses in his defense.

## § 126-8. Exceptions to provisions.

This chapter shall not apply to jukeboxes while the same are used by bona fide organizations, institutions or religious groups organized under the Membership Corporation or Religious Corporation Laws of the State of New York or used under the supervision of the school authorities of the Town of Highlands Central School District.

## § 126-9. Penalties for offenses.

*Editor's Note: Amended at time of adoption of Code (see Ch. 1, General Provisions, Art. I).* Any person violating any of the provisions of this chapter shall be guilty of a violation and, upon conviction thereof, shall be punishable by a maximum fine of $250 or by a term of imprisonment of not more than 15 days, or both. Each day that a violation of or failure to comply with any provision of this enactment or any regulation promulgated hereunder by the Board of Trustees occurs shall constitute a separate and distinct violation.

# EXHIBIT C

## Regina Taylor

| | |
|---|---|
| **From:** | Regina Taylor <rtaylor@highlandfallsny.org> |
| **Sent:** | Monday, February 10, 2014 1:45 PM |
| **To:** | 'J.feigelson@optonline.net' |
| **Cc:** | Ken Scott (kscott@highlandfallsny.org) |
| **Subject:** | FOIL request |

Mr. Feigelson, in response to your FOIL request dated January 13, 2014, the following information is provided:

2004-2014  There were no jukebox or live entertainment permits issued to the building located at 11 Main St., Highland Falls, NY, commonly known as Nicole's.

There are four jukebox permits issued under section 126-2 of the Village Code currently in effect. For copies of these permits, the  cost will be $1.00.

There are no permits currently in effect for live entertainment, except for Nicole's Catering.

In response to your FOIL request dated January 13, 2014 in regards to email, texts or letters sent on January 10,11 or 12th, in the calendar year 2014, relating to Nicole's Catering Hall, 11 Main St and also email, texts or letters since November 1, 2013, relating to Nicole's Catering Hall, 11 Main St, the following information is provided:

There are copies of 2 memos from Chief Scott to his department. The cost is $.50¢.

These copies are available to view or be picked up upon receipt of $1.50, in the Village Hall, 303 Main Street.  Please let me know when you will be coming to view or pick up so that the copies are available.  Thank you.

Regina Taylor
Village Clerk
Highland Falls, NY 10928
845-446-3400

1

# EXHIBIT D

July 8, 2014


Nicoles Catering Hall
11 Main Street
Highland Falls, NY 10928
Attention: Jeff Feigelson


To whom it may concern:


I was the Mayor of Highland Falls for approximately 20 years – between 1993 and 2013.  During such time, I do not remember any time that a violation was issued under the Live Entertainment Statute of the Village Code.  Additionally, I do not remember any time that the Village Board approved, or voted upon the approval, of a Live Entertainment Permit – a Live Entertainment Permit was typically approved (or disapproved) by the Village of Highland Falls Police Commissioner.


Sincerely,

Joseph D'Onofrio

EXHIBIT E

**Sent to:**  48          CHF KENNETH A SCOTT

**From:**  48          CHF KENNETH A SCOTT

**Date/Time Sent:** 01/03/2014 04:35:04 PM

**Subject:** NICOLES/PERMIT

**Also Sent to:**   52;   8;  202;  203;   48;   34;  216;  208;  204;  211;  212;  205;  213;   6;   22; 28PT;   38;   46;   51

---

**Message:**  A-line officers on duty 1/4/14-

I was advised by the Mayor that Nicole's Restaurant does not have a permit from the Village for live entertainment. (ie. a DJ or live performers) Go there tonight and speak with one of the owners or managers. (Jeff Feigelson, Woodley Charles or Denise Charles) Find out if they had a DJ at Nicole's on New Years Eve. If they admit to that do a 710.30 and place it in my door. Also advise them that they have to go to Village Hall and apply for a permit, and if they have any live entertainment this weekend or any other time prior to getting a permit they will be issued a summons. (this includes this weekend)

A-line officers -

Nicole's Restaurant does not have a permit to have live entertainment (VC 126-2(b) If you observe any functions there and they have live entertainment, issue an appearance ticket.

Chief Scott

# EXHIBIT F

# VILLAGE OF HIGHLAND FALLS

## VILLAGE PERMIT

### CERTIFICATE NO. 347

THIS IS TO CERTIFY THAT ___THE PARK RESTAURANT___ IS HEREBY GRANTED PERMISSION, PURSUANT TO SECTION 91 OF VILLAGE LAW OF THE STATE OF NEW YORK AND CHAPTER __126__ OF THE CODE OF THE VILLAGE OF HIGHLAND FALLS, NEW YORK TO ___HAVE LIVE ENTERTAINMENT___ WITHIN THE VILLAGE OF HIGHLAND FALLS

AT THE FOLLOWING ADDRESS:

___451 MAIN STREET___

___HIGHLAND FALLS, NY___

THIS CERTIFICATE IS GRANTED UPON THE CONDITION THAT THE OWNER COMPLIES WITH ALL LAWS AND ORDINANCES OF THE VILLAGE OF HIGHLAND FALLS AND UPON THE PAYMENT OF A FEE IN THE SUM OF $ __100.00__ FOR THE PERIOD OF ___ONE (1) YEAR___ FROM THE ___1ST___ DAY OF ___JANUARY 2009___

BOARD OF TRUSTEES,
VILLAGE OF HIGHLAND FALLS

VILLAGE CLERK
REGINA M. TAYLOR

DATED THIS ___12TH___ DAY
OF ___FEBRUARY 2009___ XX

(Seal)

# EXHIBIT G

# VILLAGE OF HIGHLAND FALLS

## VILLAGE PERMIT

### CERTIFICATE NO. 359

THIS IS TO CERTIFY THAT ___NICOLE'S CATERING HALL___ IS HEREBY GRANTED
PERMISSION, PURSUANT TO SECTION 91 OF VILLAGE LAW OF THE STATE OF NEW YORK
AND CHAPTER _126_ OF THE CODE OF THE VILLAGE OF HIGHLAND FALLS, NEW YORK TO
___HAVE LIVE ENTERTAINMENT___ WITHIN THE VILLAGE OF HIGHLAND FALLS
AT THE FOLLOWING ADDRESS:

_____11 MAIN STREET_____

_____HIGHLAND FALLS NY 10928_____

THIS CERTIFICATE IS GRANTED UPON THE CONDITION THAT THE OWNER COMPLIES
WITH ALL LAWS AND ORDINANCES OF THE VILLAGE OF HIGHLAND FALLS AND UPON
THE PAYMENT OF A FEE IN THE SUM OF $ _50.00_ FOR THE PERIOD OF
_SIX (6) MONTHS_ FROM THE ___23RD___ DAY OF ___JANUARY 2014___ .

DATED THIS ___23RD___
OF ___JANUARY___ DAY
(Seal) ___20 2014___ .

BOARD OF TRUSTEES,
VILLAGE OF HIGHLAND FALLS

_____
DEPUTY  VILLAGE CLERK
ANA I SIERRA

# EXHIBIT H

**Regina Taylor**

| | |
|---|---|
| From: | Regina Taylor <rtaylor@highlandfallsny.org> |
| Sent: | Wednesday, November 20, 2013 4:34 PM |
| To: | pflynn@highlandfallsny.org |
| Cc: | Barbara Murphy; 'Harold Brown'; 'James DiSalvo (jamesdisalvo@yahoo.com)'; Robert Mellon (RJMellon@aol.com) |
| Subject: | update |

Mayor, per your request, I did get in touch with the Attorney General's office regarding the gas station and was told that this does not constitute price gauging. A business can charge whatever they want. Businesses customarily charge competitively, however, the consumer can go somewhere else if they don't like the price. Gauging occurs when someone takes advantage of a natural disaster and increases prices to benefit from.

Also regarding the Nicole's business-if illegal activity is suspected, the first ones to investigate would be your local police who could call in the Attorney General's Office if they feel it necessary.

Gina

1