UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOWER PROPERTIES LLC, d/b/a NICOLES
a/k/a NICOLES CATERING HALL,

                                    Plaintiff,

        -against-

VILLAGE OF HIGHLAND FALLS and
PATRICK FLYNN, individually and as Mayor of
the Village of Highland Falls,

                                    Defendants.

No. 14 Civ. 4502 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Tower Properties LLC ("Plaintiff" or "Nicoles") proceeds in this action on

claims alleged pursuant to 42 U.S.C. § 1983 against Defendants the Village of Highland Falls

(the "Village") and Mayor Patrick Flynn (the "Mayor"), individually and in his official capacity,

asserting violations of Plaintiff's rights to equal protection under the Fourteenth Amendment.

Now pending before the Court is Plaintiff's motion for leave to amend the operative complaint.

For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

        The Court presumes the parties' familiarity with the facts alleged in this matter and the

procedural history, as set forth in the Opinion and Order dated July 7, 2015 ("Motion to Dismiss

Order") dismissing certain of Plaintiff's claims. (*See* ECF No. 23.) Simply put, Plaintiff alleges

it was the target of a campaign of harassment by the Village of Highland Falls, New York, at the

behest of its Mayor Patrick Flynn, due to the racial composition of its clientele. Plaintiff argues


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/7/2017

its entertainment venue, as opposed to the other bars and restaurants in town with majority

Caucasian customers, was subjected to more policing and oversight in the hopes it would go out

of business, which it eventually did, thus eliminating the influx of African-American and

Hispanic customers from surrounding areas into the Village.

## I.     Procedural History

On July 7, 2015, after a review of Plaintiff's second amended complaint,[1] this Court

dismissed, amongst others, Plaintiff's Section 1983 equal protection claim premised on selective

enforcement of the Village's "live entertainment" permit requirement.  Motion to Dismiss Order

at 21.  Although Plaintiff was granted the opportunity to amend some of the claims dismissed,

amendment of the selective enforcement claim was not specifically considered.  *Id.* at 23, 31-32

(due process claims and Section 1982 claims).  Plaintiff filed its third amended complaint on

August 4, 2015.  (ECF No. 24.)

On September 11, 2015, the parties agreed to, and the Court entered, a Rule 16

scheduling order disallowing the filing of further amended pleadings[2] and setting the deadline

for discovery to conclude as March 31, 2016, though the deadline was later extended to

September 9, 2016.  (*See* ECF No. 28; Minute Entry for June 9, 2016 Conference.)  On April 1,

2016, Plaintiff indicated its intention to amend the operative complaint yet again to "re-plead its

equal protection claim" previously dismissed and to narrow the focus of the action to only the

time period related to the selective enforcement of the live entertainment permit requirement.

(ECF No. 39.)  Accordingly, on April 7, 2016, Plaintiff stipulated to the dismissal with prejudice

---

[1]  This action was removed by Defendants to federal court on June 23, 2014.  (Notice of Removal, ECF No. 1.)  Shortly thereafter, Plaintiff amended its complaint twice: first on July 21, 2014, and again on August 25, 2014.  (ECF Nos. 4, 10.)

[2]  The scheduling order set the deadline to file further amended pleadings as September 11, 2015.

of its selective enforcement claim relating to the 2 a.m. curfew, its due process claim, and its Section 1982 claim.  (ECF No. 43 (also dismissing any claims for compensatory damages in excess of $5,000—the value of the two events allegedly canceled due to Defendants' delay in granting Plaintiff's permit request).)

Plaintiff's pending motion, fully briefed as of August 1, 2016 (ECF No. 46), seeks leave to file its proposed fourth amended complaint ("PAC") to cure the deficiencies noted in the Court's prior Order with regard to its selective enforcement claim: Plaintiff's failure to allege that the similarly situated establishments were in violation of the permit requirements at the same time that Plaintiff received its violation notice.  Motion to Dismiss Order at 21.

## II.   Supplemental Allegations Relating to the Village's Selective Enforcement of the Live Entertainment Permit Requirement[3]

Plaintiff provides the following additional information in support of its selective enforcement claim.  Specifically, "[d]uring the Mayor's term, there have been at least twenty-one events where [other] [e]stablishments have had live entertainment without a live entertainment permit[.]"  (PAC ¶ 29 (providing dates for events at the Fireside Bar & Restaurant, South Gate Tavern, and Loma's Side Street Saloon).)  Moreover, the owner of Loma's stated at a Village Board meeting in March 2014 that she had a deejay at her establishment once a month.  (*Id.* ¶ 31.)  Therefore, at the time Nicoles was cited for violating the Village's live entertainment permit requirement, none of the other local establishments received a violation notice even though they were also generally in violation of the permit requirement.  (*Id.* ¶ 28.)

---

[3] The following facts are taken from Plaintiffs' proposed amended complaint.  *See Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 366 n.1 (S.D.N.Y. 2014) (Freeman, J.) (accepting facts alleged in proposed amended complaint as true for the purposes of deciding a motion to amend).

The parties have submitted deposition testimony and documentary evidence obtained during discovery that they argue either supports or contradicts these allegations.  (*See* Pl. Aff. Exs. A-L, ECF No. 49; Defs. Aff. Exs. 1-14, ECF No. 47.)

## LEGAL STANDARD ON A MOTION TO AMEND THE PLEADINGS

Federal Rule of Civil Procedure 15 governs amendments to pleadings.  After the first amendment to a plaintiff's complaint, further amendments are conditioned on either "the opposing party's written consent or the court's leave"—the latter of which should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nonetheless, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'")).

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  A district court may "deny leave to amend where the motion has been made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).  "[T]he longer the period of an unexplained delay, the less will be required of the

nonmoving party in terms of a showing of prejudice." *Block*, 988 F.2d at 350 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

"Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers*, 654 F.2d at 856); *accord Block*, 988 F.2d at 350.  But, if during the proceedings the Court enters a Rule 16 scheduling order that further restricts amendments, then "the lenient standard under Rule 15(a) . . . must be balanced against the [stricter] requirement under Rule 16(b)[.]" *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (internal citations omitted).  Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent," where "'good cause' depends on the diligence of the moving party."  Fed. R. Civ. P. 16(b)(4); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Irrespective of whether undue delay, prejudice, or bad faith can be established, leave to amend may independently be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy*, 626 F.3d at 726 (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-11 (2d Cir. 2001)); *accord Ruotolo*, 514 F.3d at 191 (quoting *Foman*, 371 U.S. at 182).  In other words, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (denying motion to add claims as futile).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  It is important to note that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997).  The court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and quotation marks omitted).

## DISCUSSION

Since this proposed amended pleading would be Plaintiff's *fourth* amended complaint, leave of the Court is required.  *See* Fed. R. Civ. P. 15(a)(1) & (2).  Defendants argue that leave to amend should not be granted, primarily, because the amendments would be futile—asserting that Plaintiff cannot state a claim for selective enforcement of the live entertainment permit requirement even based on the facts alleged, which either remain insufficient to demonstrate Plaintiff was treated differently from the other local establishments or are contradicted by the evidence obtained during discovery.  (Defs. Opp'n at 10-15, ECF No. 48.)

The Court will first analyze whether granting leave to amend would indeed be futile, *i.e.*, whether the proposed amendments would survive a renewed motion to dismiss, before considering whether they would unduly prejudice Defendants or are motivated by bad faith, made after undue delay, or lack good cause.

## I.    Futility of Amendments

To succeed on a theory of selective enforcement, a plaintiff must prove that: "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such

selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  With regard to the second prong, this Court has already determined on the basis of Plaintiff's well-pleaded allegations—which on a motion to dismiss must be accepted as true and all reasonable inferences drawn therefrom considered—that Plaintiff's claim gives rise to an inference of discrimination.[4]  "Plaintiff alleges that Defendants waged an intentional campaign to harass and ultimately shut down Plaintiff's catering hall due to the race of its clientele," the most basic of impermissible considerations.  *See* Motion to Dismiss Order at 20.[5]

But under the first prong of this test, Plaintiff "must identify comparators whom a 'prudent person would think . . . [were] roughly equivalent,'" and then demonstrate disparity between how it was treated and the treatment of those comparators.  *Abel v. Morabito*, No. 04 Civ. 7284 (PGG), 2009 WL 321007, at *5 (S.D.N.Y. Feb. 10, 2009) (quoting *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004)) (alterations in original).

### a.  Comparators

This Court previously found, on the basis of Plaintiff's allegations, that the other "five bars located in Highland Falls[] are roughly equivalent to the Plaintiff – each establishment has

---

[4]  Plaintiff's new allegations bolster this inference.  (*See, e.g.*, PAC ¶ 15 (the Mayor told the Police Chief that "he didn't want these kinds of people in his community"); ¶ 16 (the Mayor indicated to former Village Detective Anthony Kuhn that he was concerned about "minorities, wrong crowds, coming in" from the surrounding areas); ¶ 17 (discussing a secret recording of a conversation between the Police Chief and the Mayor).)

[5]  The Court also held that, due to the Mayor's direct involvement in these events, Plaintiff was "entitled to the inference that Defendants' actions were the result of a municipal policy, practice, or custom," and that the Mayor was not entitled to qualified immunity because "[i]t is without question that the rights at issue, including the right not to be discriminated against on the basis of race, were clearly established at the time of the alleged conduct." Motion to Dismiss Opinion at 29-30.

live entertainment at its facility from time to time; plays music up to and at times past the 2 a.m. curfew; serves alcohol; and has a history of altercations on its premises."  Motion to Dismiss Order at 15.  Nothing in Defendants' current opposition alters that outcome.  Nicoles—Plaintiff's establishment—can be compared against the other Village bars, pubs, and restaurants, including: Benny Havens Sports Café, Fireside Hotel & Restaurant, Loma's Side Street Saloon, Park Restaurant, and South Gate Tavern.  (PAC ¶ 26.)[6]  At that time, the Court declined to include the Mayor's deejay business as a comparator given the difference between owning an establishment that hosts live entertainment and being a provider of live entertainment invited to an establishment.  *Id.* at 15 n.2.

As noted, however, the Village's poorly drafted statutory scheme would encompass the Mayor's deejaying activity—particularly in light of the amendments passed shortly after the incident at issue here.  *Id.*; Village L.L. No. 1-2014 (amending the definition of "Person, Firm, Corporation or Association" to, inter alia, "any person, firm, corporation or association having control over jukebox or over live or musical entertainment," and amending "Live Entertainment" to "Live or Musical Entertainment - The act of entertaining a public or private audience directly at the time of production or the act of providing musical entertainment, whether by live entertainment, recording, DJing or other forms of musical entertainment.").  Thus, the Village Code requires "[a]ny person," including someone "having control . . . over live or musical entertainment" like "DJing," who is "providing live entertainment, for the purpose of entertaining an audience, . . . to obtain a permit from the Village upon payment of a fee."

---

[6] Defendant's submissions regarding the percentage of African-American customers at Loma's cannot be considered on a motion to dismiss, and moreover, may simply demonstrate that there is a genuine dispute of material fact regarding the composition of the comparator's clientele.  (*Compare* Pl. Aff. Ex. D at 17-18 (Chief of Police for the Village believes that other establishments have predominantly Caucasian customers), *with* Defs. Aff. Ex. 4 at 7 (the owner of Loma's believes her customers are 80% African-American).)

Village Code §§ 126-2(B), 126-1.  The code does not distinguish between the owner of the establishment where the entertainment will occur and the owner of the entertainment provider: either could be held accountable for a violation.

### b.  Difference in Treatment

Similarly, the Court previously found Plaintiff's allegations sufficient to demonstrate that it was treated differently from the other establishments on multiple grounds, Motion to Dismiss Order at 16-18,[7] but not with regard to selective enforcement of the permit requirement.  This was due to the fact that "Plaintiff [did] not allege[] that the [other] [e]stablishments were providing live entertainment without the requisite permit at the same time Plaintiff received its violation notice[.]"  *Id.* at 19.  Plaintiff's new allegations seek to remedy this deficiency.

To decide whether the motion for leave to amend fails on the basis of futility the Court must determine whether the amendments show that "the [establishment], compared with others similarly situated, was selectively treated" with regard to enforcement of the live entertainment permit requirement.  *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (internal citations omitted); *see also LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999).  Plaintiff is entitled to the presumption that the new allegations are true and all reasonable inferences in his favor, unless directly contradicted by documentary evidence.  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).  But this is not a motion for summary judgment—and indeed, if there are disputed material facts, or if the evidence is in conflict, then even summary judgment would be inappropriate.

---

[7] "First, Plaintiff was subjected to a uniquely burdensome Live Entertainment Permit application process." *Id.* at 16.  "Second, Plaintiff was the only establishment threatened with a violation of the 2 a.m. curfew." *Id.* at 17.  And "[m]oreover, Plaintiff was purportedly subjected to an inordinate amount of police presence at its establishment, as well as a number of baseless police investigations – some of which were initiated directly by the Mayor . . . ." *Id.*

Considering the new allegations and Defendant's counter-arguments, Plaintiff's allegations of selective enforcement regarding the live entertainment permit requirement would not be futile, as they are sufficiently plausible to withstand a motion to dismiss.[8]  Plaintiff provides specific dates when the other establishments had live entertainment despite not having live entertainment permits.  (PAC ¶ 28, ¶ 29 (e.g., alleged live music at Loma's in January 2014), ¶ 31; Pl. Aff. Ex. G (showing a gap in permitting for the five comparators for the relevant time period).)[9]  Defendants also attempt to constrain Plaintiff's range of permissible similar events to either the *same day* that Plaintiff received its violation notice, or the same month.  (Defs. Opp'n at 10 ("Plaintiff does not allege that any other similarly situated establishment violated the live entertainment permit requirement on January 11, 2014, the date Plaintiff received its violation notice or summons[;]" and "Plaintiff fails to identify a single date in January 2014 on which another establishment was allegedly providing live entertainment without a permit.").)  But Plaintiff is not required to demonstrate that degree of similarity.  Plaintiff sufficiently alleges it

---

[8]  Plaintiff's attempt to read the jukebox permit requirement and the live entertainment permit requirement holistically as one "Music Ordinance" with accompanying permit requirements does not achieve Plaintiff's desired goal.  (*See, e.g.,* PAC ¶¶ 19-21.)  Nicoles was issued a violation notice because it hosted live entertainment without a permit.  (*Id.* ¶ 23.)  Actions, or inaction, based on jukebox permitting are thus irrelevant.

Nevertheless, Defendants' attempt to completely ignore the overlap between the two permits is also misplaced.  (*See* Def. Opp'n at 15-17.)  The renewal letters sent to establishments that already had jukebox permits specifically mentions the additional need for a live entertainment permit.  (PAC ¶ 22; Def. Aff. Ex. 11 (Letter dated January 3, 2014 to Loma's stating, in part, the "Code requires any person . . . providing live entertainment . . . obtain permits from the village . . . .  If you need an application for live entertainment, please let our office know.") (underline in original).)  Therefore, when these establishments continued to host live entertainment *after* receiving the renewal notices and the Village chose not to issue any violation notices, there is a reasonable inference that such decisions were based on impermissible discrimination.  (*See* ¶ 28.)

In any event, Plaintiff's proposed amendments in this regard, while somewhat muddled, will be allowed unless they attempt to allege selective enforcement of the jukebox permit requirement.  Defendants' persuasively point out that renewal of the jukebox permit is different from obtaining or renewing the live entertainment permit.  (Def. Opp'n at 3 ("This is just a matter of semantics.").)

[9]  And, as previously noted, Plaintiff also alleges that the Mayor's "Party Time Productions" company provided live entertainment without any permitting on various occasions.  Based on the deposition testimony submitted in conjunction with this motion, some of those appearances were at city functions, while at least one was at the predecessor establishment to Nicoles.  (*See* Pl. Aff. Exs. D (Scott Dep. Tr. at 82-84), E (Kuhn Dep. Tr. at 18).)

was treated differently based on the allegations that live entertainment also took place at Loma's, Fireside, and South Gate in March 2014, shortly after it received a violation notice, without those establishments receiving a notice of violation for lacking live entertainment permits. (PAC ¶¶ 29-30.) Furthermore, Plaintiff alleges Loma's had live entertainment in December 2013, meaning that business allegedly engaged in violative conduct before and after the ordinance was enforced against Plaintiff.

The Court cannot consider conflicting evidence on a motion to dismiss, nor have Defendants provided convincing reasons as to why their evidentiary submissions would control. (*Compare* Pl. Aff. Ex. F (permit dates), *with* Defs. Aff. Ex. 10 (a blotter of licenses and payments lacking any explanation).) Therefore, accepting Plaintiff's allegations as true, the other establishments received more favorable treatment than did Plaintiff. And, as before, Plaintiff is alleging that Mayor Flynn's motivation in treating Nicoles differently was to keep "those people" out of the Village; thus, Plaintiff has sufficiently alleged that racial animus motivated the selective enforcement of which it complains. (PAC ¶ 17.)

\*   \*   \*

If true, Plaintiff's allegations describe a troubling pattern of discrimination targeting a business that catered to minorities from outside the Highland Falls area. Defendants' arguments are better suited for a motion for summary judgment, unless they only demonstrate genuine disputes of material fact. In that case, a jury will eventually decide these questions of fact.

## II.   Defendants' Remaining Arguments Against the Proposed Amendments

Defendants' other contentions are either meritless or were addressed in this Court's prior opinion. Defendants attempt to rehash Mayor Flynn's entitlement to qualified immunity—and to argue that the Mayor is entitled to *absolute* immunity for allegedly embarking on this course of

conduct. They also argue Plaintiff's amendments are made in bad faith after undue delay which would cause significant prejudice to Defendants.

### a. Immunity

Though not found in the text of Section 1983, the common law principle of immunity has been applied to various categories of defendants sued pursuant to the statute in recognition of principle that "[p]ublic officials, whether governors, mayors or police, legislators or judges," must make decisions and take action in order to "fully and faithfully perform the duties of their offices"—and "it is better to risk some error and possible injury from such error than not to decide or act at all." *Scheuer v. Rhodes*, 416 U.S. 232, 241-42 (1974); *see also Spalding v. Vilas*, 161 U.S. 483, 499 (1896) ("if [an executive officer] acts, having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals").

To determine if absolute immunity applies to a particular defendant's conduct, the test is a functional one—whether the actions taken were legislative, judicial, or prosecutorial in nature—and does not rely on whether the defendant's title falls within a designated category. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) ("officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions"); *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)) (a "private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is '"functionally comparable" to that of a judge'"); *Doe v. Phillips*, 81 F.3d 1204, 1213 (2d Cir. 1996) ("In short, absolute immunity insulates

prosecutorial misconduct—however outrageous—so long as the misconduct is prosecutorial.");
*Kalina v. Fletcher*, 522 U.S. 118 (1997) (same).

Where a local official wears many hats, the actions must be considered separately. *See, e.g.*, *Reed v. Village of Shorewood*, 704 F.2d 943, 951-54 (7th Cir. 1983) (according separate analysis of each immunity defense interposed, based on defendant's simultaneous roles as local liquor control commissioner (judicial), president of the local board of trustees (legislative), and mayor (administrative), and finding absolute immunity only for judicial and legislative acts), *overruled in part by Brunson v. Murray*, 843 F.3d 698, 714 (7th Cir. 2016) ("Absolute immunity should no longer apply to non-renewal decisions, which lack the hallmarks of a judicial act."); *accord cf. Kinderhill Farm Breeding Assocs. v. Appel*, 450 F. Supp. 134, 136 (S.D.N.Y. 1978) ("denial of a license or permit by a local governing body is not legislative activity").

Indeed, even where the local official in question is the mayor, some actions will not be entitled to this shield. *Yeshiva Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead by its Bd. of Trustees of Vill. of New Hempstead*, 98 F. Supp. 2d 347, 357 (S.D.N.Y. 2000) ("roles of building inspector and mayor are not functionally comparable to those of judge or prosecutor—and they certainly are not insulated from political influence—and thus the rationale of *Butz* does not apply"); *Hill v. Borough of Kutztown*, 455 F.3d 225, 243 (3d Cir. 2006) (absolute immunity "d[id] not shield [the mayor] because the conduct with which he [was] charged—constructive discharge through harassment, defamation, and accusations of illegality—was not 'legislative activit[y]'"); *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 9 (1st Cir. 2000) (alleged acts of mayor and director implementing a layoff plan that targeted individuals based on party affiliation were administrative rather than legislative and thus were not protected by absolute immunity).

Defendants argue the Mayor was performing a prosecutorial function when he directed the police to issue the violation notice against Plaintiff and is thus entitled to absolute immunity. It is true that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Kalina*, 522 U.S. at 126 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune"). On the other hand, "administrative duties and [] investigatory functions," *Buckley*, 509 U.S. at 273, such as providing legal advice to the police during pretrial investigations, holding a press conference, or planning and executing a raid, are not entitled to that level of immunity. *Kalina*, 522 U.S. at 126-27.

Defendants attempt to rely on a footnote in the Second Circuit's summary order in *Pinter v. City of New York*, 448 F. App'x 99 (2d Cir. 2011), in support of their argument that prosecutorial immunity shields the Mayor's actions. In *Pinter*, the Director of the New York City Mayor's Office of Special Enforcement, was entitled to absolute immunity for allegedly directing the commencement of a nuisance abatement action against the plaintiff for discriminatory reasons. *Pinter*, 448 F. App'x at 102 n.4 (notably the grant of absolute immunity was not at issue on appeal). But unlike the official in *Pinter*, who brought the abatement action *directly* in a quasi-prosecutorial fashion pursuant to statutory authority, *see Pinter v. City of New York*, 710 F. Supp. 2d 408, 423-24 (S.D.N.Y. 2010) ("the City [was] authorized to bring and maintain an action in the state Supreme Court to permanently restrain public nuisances and the persons conducting or permitting the nuisance to occur"), Mayor Flynn allegedly only created a discriminatory plan and directed the Chief of Police to implement it.

Mayor Flynn's alleged direction was, therefore, not taken as a prosecutor or in a quasi-role as an advocate, but rather as the chief executive of the Village, and he is not entitled to absolute prosecutorial immunity.  *See, e.g.*, *Eberhart v. Gettys*, 215 F. Supp. 2d 666, 678-80 (M.D.N.C. 2002) (considering only whether qualified immunity would apply to actions allegedly undertaken by mayor to selectively enforce a town's ordinances on the basis of racial bias); *Johnson v. City of Chester*, 10 F. Supp. 2d 482, 488 (E.D. Pa. 1998) (rejecting mayor's "claim of legislative immunity, because the actions of which [plaintiff] complain[ed]—namely, the two prosecutions—took place outside the presence and scope of [the mayor's] legislative function," where the mayor and commissioner of police had "decided to charge [plaintiff] with disorderly conduct" for calling the mayor an "ignorant bastard").  Similarly, the Court has already disposed of the question of Mayor Flynn's qualified immunity at this stage of the litigation.  Motion to Dismiss Order at 29-30.  Finally, if on summary judgment the Court determines that the Mayor is entitled to some form of immunity, then the allegations of the Mayor's involvement may still be relevant to Plaintiff's *Monell* claims.  *See Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 559 (S.D.N.Y. 2006) (village was liable where "evidence [was] incontrovertible that the acts at issue in this case were done at the direction and under the control of [the mayor and chief of police]" and where there could be "no question that both of them [were] municipal policymakers for purposes of municipal liability").

### b.  Potential Prejudice, Good Cause for Any Undue Delay, or Bad Faith

Defendants have been aware of this aspect of Plaintiff's selective enforcement claim since the action was first filed.  It cannot, therefore, come as a surprise that Plaintiff sought discovery on this related claim, which may have bolstered its other selective enforcement allegations.  Moreover, discovery was eventually extended beyond March 31, 2016 to at least

September 2016, which significantly post-dates Plaintiff's request to amend the pleadings and demonstrates there is little prejudice—from a discovery standpoint—associated with allowing the amendment.[10]

Plaintiff's amendments are, however, offered long after the September 11, 2015 cut-off provided for in the Rule 16 scheduling order.  But, there is no indication that the amendments constitute mere dilatory tactics.  The request came, at worst, a few months after Plaintiff finished collecting its evidence through discovery.  Therefore, particularly since the proposed amendments relate to a previously asserted claim, the Court finds Plaintiff sufficiently diligent in this case to meet the "good cause" threshold for modifying the scheduling order.  *See Parker*, 204 F.3d at 326.

Finally, Plaintiff's amended allegations are supported, to some degree, by the evidence cited by the parties.  That there is conflicting evidence, or that the evidence can be weighed differently, does not mean Plaintiff's proposed amendments are offered in bad faith.  Defendant is incorrect that these allegations are "false"—at worst, there is a dispute regarding, for example, the ethnic makeup of the other establishments' clientele.  *See supra* n.6.

Therefore, the Court grants Plaintiff's request for leave to amend, finding good cause to amend the scheduling order and finding that the delay in bringing the request was not the result of bad faith or likely to cause prejudice to Defendants.

---

[10]  In fact, Defendants argued that if they were "ever authorized to have access to the[] Justice Court records [regarding the permit violation], the depositions of Mr. Feigelson and Mr. Charles will likely need to be reopened."  (Defs. Opp'n at 25.)  The Court has been informed that the authorization was provided on October 13, 2016.  (ECF No. 52.)  Thus, discovery will either continue, or has already continued, further eliminating any concerns of prejudice or undue delay associated with Plaintiff's proposed amendment.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion seeking leave to amend the operative complaint in this action is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 46.  Plaintiff shall file its fourth amended complaint conforming to this Opinion on or before March 1, 2017.  Defendants are directed to thereafter file an answer, if any, to the amended complaint on or before April 1, 2017.  The parties are directed to contact Magistrate Judge McCarthy to schedule a status conference or to advise this Court if discovery is complete.

Dated:     February 7, 2017
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge